# SUPERIOR COURT
## OF THE
# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent Count Courthouse
38 The Green
Dover, DE 19901
302-735-2111

January 26, 2018

Gregory R. Babowal, DAG
Lisa Whitelock, DAG
Department of Justice
102 West Water Street
Dover, DE 19901

Lloyd A. Schmid, Jr., Esq.
Richard F. Matoni, III, Esq.
Office of the Public Defender
45 The Green – Sykes Building
Dover, DE 19901

**RE:  *State v. Larry Pierce***
***ID No. 1601006859***

Submitted:  January 22, 2018
Decided:  January 26, 2018

Counsel:

Defendant Larry Pierce's ("Mr. Pierce's") Murder First Degree trial is scheduled to begin on February 5, 2018. In advance of trial, Mr. Pierce filed three motions *in limine* challenging the admissibility of testimony from three State experts. Namely, Mr. Pierce challenges the opinions of Brian Daly (a cell phone tower expert), Dr. Gary Collins (the State Medical Examiner), and Carl Rone (a firearms identification expert).[1] On January 11 and 12, the Court held three separate evidentiary hearings. After considering the evidence at those hearings and the written submissions and arguments of the parties, the Court denies Mr. Pierce's motions to exclude portions of the opinions of the Medical Examiner. The Court

---

[1] After the hearing, but before the Court's decision, the State notified the Court and opposing counsel that it will not seek to offer Mr. Rone's testimony at trial.

also denies Mr. Pierce's motion to exclude portions of Mr. Rone's testimony as moot. The Court, however, grants in part Mr. Pierce's motion regarding Mr. Daly's cell phone tower opinions. The Court defers the balance of its decision regarding the admissibility of Mr. Daly's opinion testimony until trial, to permit additional evidentiary context.

## Factual Background

All facts cited herein are those found by the Court after the two relevant evidentiary hearings held to determine the admissibility of the experts' opinions. On April 18, 2009, Josue Barclay died from a gunshot wound to the rear of his head. The alleged murder scene was on Governor's Avenue in Dover. According to an Office of the Chief Medical Examiner "Death Investigator Report", witnesses heard a shot on the street and discovered the alleged victim lying halfway on the sidewalk and halfway on the street, between two vehicles. Mr. Barclay's autopsy confirmed his cause of death to be a gunshot wound to the rear of his head. The State indicted Mr. Pierce seven years later, charging him with Mr. Barclay's murder.

Dr. Collins, the medical examiner, reviewed the autopsy report, autopsy photographs, crime scene photographs, and the on-scene investigative report. After his review, he agreed with and offers the same opinion as that of his predecessor, Dr. Tobin, the medical examiner initially offering an opinion regarding cause and manner of death. Namely, Dr. Collins offers the opinion that the alleged victim died from a gunshot wound to the rear of the head, and that the manner of death was a "homicide" as opposed to an "accident" or a "suicide."

Next, Brian Daly, a Department of Justice investigator, testified that he secured training in comparing call detail records to cell tower locations. Using this method, he seeks to identify the towers used during phone calls and which one of

2

the three sides of the tower the phone accessed during the calls. After applying this information to a "key", he can pinpoint the location of the tower on a map.

In this case, he applied this methodology to a telephone number the State proffers was associated with Mr. Pierce at or about the time of the alleged murder. The call detail records provide information sufficient for him to offer an opinion regarding the cell tower used to initiate a call and the last cellular tower used to handle the same call. The State seeks to offer his opinion through testimony and exhibits that certain towers in the Dover area were used for calls the night before and the morning of the shooting.

There are significant limits to this method that make it impossible for it to provide a specific location of a cellular phone during a call. These limits are compounded because there is no assurance that a given cellular phone accessed the nearest tower. Rather, it merely seeks the strongest signal at a given location, which may or may not be from the nearest tower. According to Mr. Daly, the most this method shows is that a cellular phone accessed one of three sides of a given tower and did so within twenty miles of that tower.

Furthermore, one of the maps referenced by Mr. Daly shows that there are at least three towers within less than two miles of the alleged murder scene. The phone at issue accessed those three towers at various times the night before and the morning of the alleged murder. There is also no evidence regarding the location and number of other towers within twenty miles of the alleged crime scene.

## Standard

Mr. Pierce filed a motion pursuant to *Daubert*[2] to exclude Brian Daly's testimony. He also filed a second motion *in limine* seeking to exclude Dr. Collins' opinion that the alleged victim's manner of death was a homicide and that the decedent was shot by an unknown assailant. With regard to both motions, Mr. Pierce primarily challenges the reliability of these opinions by arguing that both experts incorrectly applied their methods to the facts of the case. He also challenges both based on Delaware Rule of Evidence 403 (hereinafter "D.R.E. 403") concerns.

In order to be admissible, an expert must be qualified, his or her testimony must assist the trier of fact, be based upon sufficient information, be the product of reliable principles and methods, and must apply the principles and methods reliably to the facts of the case.[3] Furthermore, if challenged, expert testimony must undergo the reliability analysis required by *Daubert*. The Court's function in that regard is described as that of a gatekeeper.[4] In a *Daubert* analysis, the Court must apply a non-exclusive list of factors to evaluate the overall validity of the method.[5] The proponent of this testimony bears the burden of establishing its admissibility by a preponderance of the evidence.[6] Finally, if challenged, any such testimony must survive a D.R.E. 403 balancing test.

## Brian Daly's Opinions

The State proffers Brian Daly's testimony to establish a general location for a cell phone around the time of the alleged murder. Furthermore, the State proffers

---

[2] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).
[3] D.R.E. 702.
[4] *Bowen v. E.I. Dupont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006).
[5] *See id.* at 794-795 (directing the trial judge to apply a non-exclusive list of factors to evaluate the overall science or method, and then to apply a five-step test consistent with D.R.E. 702).
[6] *Id.*

that the phone's access of different towers during relevant times shows movement or lack of movement during the time of the call detail reports. Mr. Pierce challenges Mr. Daly's opinions on multiple grounds. He focuses mainly on his allegation that Mr. Daly's opinion is inadmissible because it is unreliable as applied. He also asserts that its limited probative value would be substantially outweighed by confusion of the issues and unfair prejudice.

In support of his motion, Mr. Pierce offered testimony of his own cell tower expert Joseph Kennedy. With regard to the issues germane to the Court's decision, the two experts generally agree. Namely, this method cannot pinpoint an individual's location; it permits verification that a particular tower and which of the three sides of the tower were used in a call; and the cell phone accessing the tower could have been anywhere within twenty miles of the tower. Both Mr. Daly and Mr. Kennedy agree that the calls listed in the call detail report could have been made anywhere from near the tower to twenty miles away. Mr. Kennedy also offered a map through his testimony illustrating that phones from the various towers in downtown Dover could have accessed the three towers from as far away as Millington, Maryland, Townsend, Delaware, or Sea Breeze, New Jersey. Mr. Daly's testimony, although not couched in those terms, is consistent in that respect.

As far as an analysis pursuant to *Daubert*, the Court finds consistently with the Superior Court in *State v. Taylor* that the methodology used by Brian Daly meets *Daubert* standards.[7] In fact, in an appeal of that same case, the Delaware Supreme Court expressly affirmed the Superior Court's findings as to the reliability of this limited testimony pursuant to *Daubert*.[8] The science and expertise involved satisfies each of the *Daubert* criteria.

---

[7] *State v. Taylor*, C.A. No. 0904013885, at 73-77 (Del. Super. Apr. 21, 2010) (TRANSCRIPT).
[8] *Taylor v. State*, 23 A.3d 851, 856 (Del. 2011).

5

This case turns more on a Delaware Rule of Evidence 702 (hereinafter "D.R.E. 702") analysis and on D.R.E. 403. The majority rule provides that testimony such as this is reliable and admissible.[9] Likewise, this Court finds that Mr. Daly's method generally meets D.R.E. 702 criteria in at least certain circumstances. For instance, it has potential to help the trier of fact when a very general location of a phone is at issue. However, based on the evidence at the hearing, and the proffers of the State regarding its relevance, the Court finds it to be only marginally relevant in this particular case. Namely, the Court finds the urban setting of the crime, the location of three towers within two miles of the crime scene, and the expert's inability to explain why any particular tower was accessed at a given time, significantly minimizes the evidence's probativeness as to location and movement. The Court also finds a substantial risk of confusion and unfair prejudice that is necessarily to balance against the State's limited proffer regarding its relevance.

Furthermore, any "pie-graph" chart, showing sectors with a radius of 1.15 miles (or any particular radius for that matter) would constitute an incorrect application of Mr. Daly's methods to the facts of this case. For that reason, that portion of his opinion does not satisfy D.R.E. 702's standard for admissibility. Its propensity to confuse the trier of fact would also substantially outweigh any limited relevance. Accordingly, any such pie-graph on a map relating to cell towers that were accessed during relevant times will be inadmissible at trial.

At this stage, absent further development of the evidence at trial, the Court will not rule that Mr. Daly's opinion testimony is barred. As previously mentioned, the Court recognizes that such an opinion could often be helpful to the trier of fact.

---

[9] *See United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 56 (D. D.C. 2013) (recognizing that this method has been widely accepted by numerous courts."). Most examining courts, however, recognize the significant limitations of this method. *See U.S. v. Reynolds*, 626 Fed. Appx. 610, 617 (6th Cir. 2015) (recognizing that historical cell-site tracking cannot reliably determine a caller's location and has significantly limited evidentiary value in many circumstances).

In a number of circumstances, its potential probative value would not be substantially outweighed by D.R.E. 403 concerns. However, under the circumstances of this case, the risks of confusion of the issues and unfair prejudice are significant. To mitigate against this risk of unfair prejudice, the parties shall not present evidence or argument regarding this proposed testimony without first addressing the issue outside the presence of jury. The State's proffered relevance at this point is not sufficient to justify its admission. If the State requests admission of his testimony, upon additional evidentiary context and proferred relevance, the Court will evaluate the extent to which its probative value may not be substantially outweighed by the risk of confusing the jury given the limits of this method's helpfulness within an urban setting with multiple cell towers in close proximity.

### Dr. Collins' Opinion Regarding Manner of Death

Mr. Pierce also challenges Dr. Collins' opinion that the case involves a homicide. While he does not challenge the science involved, he argues that Dr. Collins does not accurately apply his methodology to the facts of this case. In this regard, Mr. Pierce argues that based on a medical examination/autopsy alone, a coroner cannot reliably differentiate between a homicide and an accident or suicide as the manner of death. In further support of his argument, Mr. Pierce cites the Center for Disease Control's Medical Examiner and Coroner's Handbook. That handbook defines the two manners of death primarily at issue – accident or homicide. Mr. Pierce argues that Dr. Collins opinion that this was a homicide is not reliable in this case.

Here, after considering the doctor's testimony and the basis for his opinions, the Court finds it sufficiently reliable to be presented to the trier of fact. Here, the Court agrees that Dr. Collins' opinion could not include differentiating the manner of death between an accident and a homicide if it were based solely on the autopsy

results. However, Dr. Collins persuasively testified that the facts and information relied upon by a medical examiner are not limited to the findings in an autopsy. Namely, he testified that he bases his opinion both on the autopsy results *and* the on-scene investigative report. That report provided significant information, including witness statements and physical findings, reasonably relied upon by an expert such as Dr. Collins.[10] In one sense, relying on this information is no different than a treating physician relying upon the medical history of a patient to determine causation of an injury. The facts available to Dr. Collins support his opinion that the manner of death was a homicide as opposed to a suicide or an accident. Likewise, his reference to an unknown assailant does not cause significant unfair prejudice to Mr. Pierce. Nothing regarding these statements involve Dr. Collins providing an opinion regarding the state of mind of the person or persons who shot Mr. Barclay. Dr. Collins testimony will be helpful to the trier of fact and D.R.E 403 concerns do not justify barring it.

Of course, the ultimate weight due the opinion will be an issue for the jury. Many of the good points raised by Mr. Pierce will be the subject of and tested by cross examination at trial. Nevertheless, Dr. Collins' opinions are admissible after reviewing *Daubert*, D.R.E. 702, and D.R.E. 403 concerns. Accordingly, Mr. Pierce's motion to bar Dr. Collins' opinion is denied.

### Conclusion

For the reasons discussed, Mr. Pierce's motion to exclude or limit the testimony of Dr. Collins is **denied**. Mr. Pierce's motion to exclude the testimony of

---

[10] *See* D.R.E. 703 (requiring that facts and data forming the basis of an expert's opinion be "of a type reasonably relied upon by experts in a particular field."). In his written submission filed after the hearing, Mr. Pierce argues that it is inappropriate for Dr. Collins to rely upon the layered hearsay contained in the investigative report when forming his opinions. However, D.R.E. 703 recognizes that in terms of foundation for expert testimony "the facts or data [relied upon] need not be admissible in evidence in order for the opinion . . . to be admitted.").

8

Mr. Daly is **granted in part** as to the use of a pie chart showing a range limit to the cell towers' signals. The Court's decision regarding the balance of his opinion regarding a cell phone's access to certain towers and sides of towers during the relevant period of time is **deferred** until trial. The State shall offer no evidence and shall not comment to the jury regarding his opinions without first raising the issue outside their presence. Finally, since the State no longer seeks to offer Mr. Rone's testimony at trial, Mr. Peirce's motion to exclude it is denied as *moot*.

  **IT IS SO ORDERED.**

/s/ Jeffrey J Clark<br>
Judge

JJC:jb
oc: Prothonotary

9